## BEAVERS ET AL. *v.* BESS ET AL.

[No. 8,733.  Filed March 24, 1915.]

1.  APPEAL.—*Review.—Weight of Conflicting Evidence.*—The court on appeal will not weigh conflicting oral testimony, either in a suit in equity or an action at law, and the finding of the trial court thereon is conclusive on appeal.  p. 292.

2.  DEEDS.—*Undue Influence and Fraud.—Evidence.—Review.*—A deed can not be set aside on the ground that its execution was procured by undue influence and fraud, where all the evidence bearing upon that subject merely disclosed that the grantee and her family had been kind to the grantor during the years of his

adversity, and that he had a desire to reward her when property should come into his hands, and finally did so by the execution of the deed in suit. p. 292.

3. DIVORCE.—*Decree.*—*Collateral Attack.*—A decree of divorce that is absolutely void, may be challenged collaterally; but if it is merely voidable, the attack must be by direct proceeding. p. 294.

4. DIVORCE.—*Decree.*—*Collateral Attack.*—*Want of Jurisdiction.*— A judgment or decree entered of record in a court of general jurisdiction is not void for want of jurisdiction merely from the fact that the court did not have jurisdiction to render it, but, to render it void, such want of jurisdiction must appear upon the face of the record; hence, the fact that summons in a divorce action was not served on defendant, who was a resident of the State, and that the decree was granted on default after publication of notice on the affidavit of plaintiff that the defendant was a nonresident, did not render the decree void for want of jurisdiction, and subject to collateral attack, where there was nothing on the face of the record affirmatively showing that defendant had no notice of the action. p. 294.

5. DIVORCE.—*Vacation of Decree.*—*Effect.*—A valid judgment vacating a decree of divorce renders the decree void *ab initio* and restores the parties to their previous marital rights. p. 298.

    DIVORCE.—*Vacation of Decree.*—*Collateral Attack.*—Where the plaintiff's right to property involved in the action is based upon a judgment vacating a decree of divorce, the contention that plaintiff should be denied relief because she waited three years after learning of the divorce decree, and until her husband had become possessed of property, before commencing proceedings to vacate the decree, can not be inquired into, since the court rendering the judgment was one of general jurisdiction, and the infirmity does not appear upon the face of the record. p. 299.

7. DIVORCE.—*Vacation of Decree.*—*Death of Party.*—On the death of a party who has obtained a divorce, either before or after a suit is brought to set aside the decree, the court is without jurisdiction to determine the question and set aside the decree, independent of any other question; and if property rights are involved in such suit, the issues should be reformed and all persons interested should be made parties; hence a judgment rendered after the death of the party who had obtained a divorce, on the substitution of his administrator only as a party, was ineffective to vacate the decree. p. 299.

From Hancock Circuit Court; *Earl Sample,* Judge.

Action by Margaretta Beavers and another against Cora D. Bess and another. From a judgment for defendants, the plaintiffs appeal. *Affirmed.*

*J. L. Shelton* and *Forkner & Forkner,* for appellants.
*Clarence Brown* and *Tindall & Tindall,* for appellees.

MORAN, J.—Appellants sought to set aside the conveyance of a certain tract of real estate in Henry County, Indiana, held by the appellee, Cora D. Bess. Judgment was rendered against appellants in the Hancock Circuit Court, where the cause had been venued. Appellants appeal from this judgment, and assign as error the overruling of the motion for a new trial.

The complaint, in substance, alleges that one John M. Beavers departed this life March 23, 1912, intestate, in Henry County, Indiana, and left surviving him appellant, Margaretta Beavers, his widow, and appellant, Leota C. Burch, his daughter, as his sole and only heirs. Upon the death of John M. Beavers all of his property, both real and personal, descended to the appellants in common. On February 10, 1912, John M. Beavers was the owner and in possession of thirty acres of real estate in Henry County, Indiana; and on that date, and for a long time prior thereto, he was a person of weak and unsound mind, easily influenced, and prejudiced against his family and friends. Appellees sometime prior to said date commenced to poison the mind of John M. Beavers against his wife and child, and by false and fraudulent statements induced and caused him to believe that they cared nothing for him; and that appellees were in fact his friends; and by fraudulent protestations of friendship and kindness and affection for him, obtained over him an undue and fraudulent influence by reason of the weak and unsound condition of his mind. Appellees on February 10, 1912, caused and procured John M. Beavers to execute a deed of conveyance to appellee, Cora D. Bess, to the real estate heretofore mentioned; and that at the time of the execution of the deed, he was of unsound mind and that the same was procured by fraud, and was void and of

no effect. Appellants disaffirmed the deed on September 28, 1912, and requested a reconveyance to them as the surviving heirs of John M. Beavers. Appellants are the owners and entitled to the possession of the land, and appellees' claim to the same is unlawful, wrongful and without right. The deed should be set aside and declared null and void, and appellants should recover possession of the land and the title should be quieted and set at rest. An answer of general denial was addressed to the complaint, with the further agreement that all matters of defense should be admitted without special pleadings.

The causes assigned in the motion for a new trial are, (1) that the finding and decision of the court is not sustained by sufficient evidence; (2) the finding and decision of the court is contrary to the evidence; and (3) the finding and decision of the court is contrary to law. The questions presented by the motion for a new trial are numerous; and it will be convenient in presenting the same to classify them under two general propositions: (1) Was John M. Beavers a person of unsound mind at the time he conveyed the real estate in question to appellee, Cora D. Bess, the wife of her coappellee, Red Bess, and was the execution of the deed to the real estate procured by fraud and undue influence? (2) Was John M. Beavers legally divorced from appellant, Margaretta Beavers, on February 10, 1912, the date of the execution of the deed to appellee, Cora D. Bess?

As to the first proposition, the evidence briefly discloses that John M. Beavers together with his wife and daughter, appellants herein, moved from the state of Illinois to Knightstown, Indiana, in 1892. Before moving to this State, he inherited considerable property from his ancestors in Illinois, and a short time after he settled in this State, some money came into his hands by reason of the sale of his wife's property in Illinois. With this money, he purchased what was known as the Ogden mill, an old water mill at Ogden, Indiana. His judgment in investing his money was not

good, and his money and property gradually dwindled away until he was reduced to want. He was careless in his manner of living, and queer and eccentric in his disposition. He and his wife became estranged sometime during the year of 1903; she went to live with her daughter, Leota C. Burch, her coappellant, in Franklin County, Indiana. After his wife left, he visited her at various times at his daughter's but the visits finally grew less frequent, and for several years prior to his death, it appears that they saw each other very seldom. After the home was broken up, he spent part of the time at the home of appellee, Cora D. Bess, who was no relation to him. A part of the time he maintained a very crude and rustic home of his own, which consisted of one small room poorly furnished. Appellee, Cora D. Bess, seemed to look after his wants, did his washing and ironing and furnished his food from time to time. During the year, 1911, his brother, who was a person of unsound mind, died in the state of Illinois, and John M. Beavers inherited considerable money from him. Upon receiving the same, he invested in the neighborhood of $2,000 in an outfit for the drilling of oil wells, and made other investments of like character. Part of the money was invested in purchasing the land, which he afterwards deeded to the appellee, Cora D. Bess. Frequently before receiving the money from his brother's estate, he stated to several of his friends and associates that appellee, Cora D. Bess had been very kind to him, and stated at the time of the purchase of the real estate, that he wanted to reward her for her kindness. At the time he conveyed the real estate to her, it was understood in a general way that he was indebted to her in the sum of $500 for the attention she had given to him during the many years prior thereto, and this was a part of the consideration for the execution of the deed. It was likewise stated in the deed that she was to maintain and support him during his natural life and pay all doctor bills and expenses, including that of his last sickness and funeral expenses. November

21, 1908, he procured a divorce in the Henry Circuit Court from his wife, notice being had by publication. February 15, 1912, his wife brought a suit to set aside the decree of divorce, within a few days after the execution of the deed in controversy. On April 4, 1912, the body of John M. Beavers was found in a little one-room building on the lands in question, with a gunshot wound in his left breast, and a note was found indicating that he had taken his own life.

There is a large volume of evidence disclosing the life and character of John M. Beavers for a period of many years prior to his death. Quite an array of witnesses expressed their opinions upon facts stated that he was a person of unsound mind on the date of the execution of the deed of conveyance to the appellee, Cora D. Bess, and likewise a number of witnesses expressed their opinions upon facts stated, that he was a person of sound mind. Taking the evidence as a whole upon the subject of the soundness or unsoundness of mind of the decedent and giving to it its most favorable construction in behalf of the appellants, it discloses that there is a sharp conflict in the evidence upon this subject.

This court will not weigh conflicting parol evidence, either in a suit in equity or an action at law. The decision of the trial court upon the weight of conflicting evidence under such circumstances is conclusive upon appeal. Over v. Dehne (1906), 38 Ind. App. 427, 75 N. E. 664, 76 N. E. 883; Parkison v. Thompson (1905), 164 Ind. 609, 73 N. E. 109; United States, etc., Paper Co. v. Moore (1905), 35 Ind. App. 684, 72 N. E. 487, 74 N. E. 1094; Barnes v. Stock (1912), 51 Ind. App. 640, 100 N. E. 98.

Taking all of the evidence that has any tendency whatever to throw light upon the subject of undue influence and fraud, it discloses no more than that appellee, Cora D. Bess, and her family were kind to John M. Beavers during the years of his adversity, and that he had a desire to and did, when property came into his hands, reward

Mrs. Bess for her kindness to him. The deed executed by John M. Beavers to the appellee, Cora D. Bess, was not invalid by reason of unsoundness of mind, undue influence or fraud. The conclusion reached upon this phase of the case disposes of the interest in the real estate claimed by the appellant, Leota C. Burch, daughter of John M. Beavers. The deed in controversy carried all the right, title and interest John M. Beavers had in and to the real estate to the appellee, Cora D. Bess.

The second proposition, viz., was John M. Beavers legally divorced from appellant, Margaretta Beavers at the time he conveyed the real estate in controversy to appellee, Cora D. Bess, presents a more serious question. If the divorce proceedings were void at the time he disposed of the real estate as aforesaid, then upon his death, his wife's inchoate interest ripened, and by reason of her marital rights, she became a tenant in common with the appellee, Cora D. Bess.

On June 9, 1908, John M. Beavers instituted an action for divorce in the Henry Circuit Court, against the appellant, Margaretta Beavers. By mistake the summons was sent to the city of Franklin in Johnson County, Indiana, when it should have been sent to Franklin County, Indiana, where appellant was residing with her daughter. The summons was returned unserved. On October 7, 1908, the clerk of the Henry Circuit Court caused to be published a nonresident notice. The record discloses that an affidavit was filed by John M. Beavers stating that his wife, Margaretta Beavers was a nonresident of the State and that he believed she was a resident of Cincinnati, Ohio. Upon default of appellant, Margaretta Beavers, John M. Beavers was granted a divorce by the Henry Circuit Court, November 21, 1908. There is some evidence in the record that sometime before the divorce proceedings were instituted, she was in the state of Illinois, and the evidence likewise shows that sometime during the year, 1907, she spent two weeks at Cincinnati, Ohio. The conclusion must be reached from the evidence

that, at the time the divorce proceedings were instituted and at the time the nonresident notice was given, appellant, Margaretta Beavers was a resident of the State of Indiana. On February 15, 1912, she brought suit to set aside the decree of divorce on the grounds that the affidavit upon which the nonresident notice was given was fraudulently made by John M. Beavers, and that the decree was void for want of notice. While this action was pending and after an appearance thereto, the death of John M. Beavers occurred. An administrator of his estate was substituted and upon submission of the cause, the decree of divorce was set aside. There are other facts which might be stated in this connection, but which can with convenience be referred to in connection with the presentation of the legal questions involved.

If the decree of divorce obtained under the circumstances upon nonresident notice is absolutely void, then the validity of the judgment setting aside the decree of divorce 3. is immaterial, for if void, it was of no effect and could be challenged collaterally, and the suit at bar raises the question effectually. If the decree of divorce was not void but voidable, then the validity of the same could be challenged only by a direct attack. Essig v. Lower (1889), 120 Ind. 239, 21 N. E. 1090; Stevens v. Reynolds (1896), 143 Ind. 467, 41 N. E. 931, 52 Am. St. 422; Boyer v. Berryman (1890), 123 Ind. 451, 24 N. E. 249; Friebe v. Elder (1914), 181 Ind. 597, 105 N. E. 151. The appellate tribunal of this State has given much atten- 4. tion, as is disclosed by the decisions, to the distinction between judgments that are void and those that are voidable only. In Jackson v. State, ex rel. (1886), 104 Ind. 516, 3 N. E. 863, Elliott, J., speaking for the court, said: "The assumption of jurisdiction and the entering of a decree or judgment is an adjudication upon the question of notice, without any formal or expressed declaration to that effect. * * * Where a court of general jurisdiction assumes

jurisdiction, the existence of all facts necessary to confer jurisdiction are presumed to exist.'' In *Smith* v. *Hess* (1884), 91 Ind. 424, Judge Zollars makes use of the following language, ''Judgments are frequently spoken of as void, because they may be so declared in a proper proceeding. The general and correct rule, as established by the weight of authority, is, that a judgment by a court of competent jurisdiction is not void, unless the thing lacking, or making it so, is apparent upon the face of the record. If the infirmity does not so appear, the judgment is not void, but voidable.'' This same language is used in the case of *Earle* v. *Earle* (1883), 91 Ind. 27, which was a proceeding instituted to set aside and vacate a decree of divorce. In *Baker* v. *Osborne* (1914), 55 Ind. App. 518, 104 N. E. 97, this court quotes with approval from *Muncey* v. *Joest* (1881), 74 Ind. 409, as follows: ''Whether there was or was not notice, was, of course, a jurisdictional question, and this question having been considered and determined by the commissioners' court, that decision can not be subjected to· review and overthrown by collateral attack, such as the present. * * * The general rule upon this subject, deducible from the authorities, may be thus stated: If there is no notice whatever, and this affirmatively appears upon the face of the proceedings, the judgment will be void, and may be overthrown ·by collateral attack. If a court having jurisdiction of the subject matter, and required to determine all jurisdictional questions, either expressly or impliedly, adjudges that notice was given, its decision will repel a collateral attack, unless the record of the court affirmatively shows that no notice was given; and this is so, although the record shows a defective and irregular notice.''

In *Friebe* v. *Elder, supra,* 604, which involved the question of the validity of a divorce proceeding, where there was an attempt to acquire jurisdiction over the person by waiver of process, which it was held conferred no jurisdiction, and where the decree appears to have been entered upon

the same day that the complaint was filed, the court said: "Does the record show on its face that no summons was issued for Mrs. Friebe? If so, the court was without jurisdiction, for she had not appeared and the pretended waiver was without effect. All authorities agree that, where the record affirmatively shows want of jurisdiction of a party a judgment against him is absolutely void. The complaint here alleges that it contains a copy of all the record in the divorce case. The copy is silent on the subject of the issue and service of summons. One may have been issued and served, for aught that appears on the face of the record. It is true that, if there was such issuance and service, it was on the day the complaint was filed and decree rendered, which made the entry of the default before return day a palpable error; yet such error would not deprive the court of jurisdiction acquired by the issuance and service, and open the judgment to collateral attack." In *Stone* v. *Elliott* (1914) 182 Ind. 454, 474, 106 N. E. 710, the court said: "The powers of a court extend to the determination of questions relating to its own jurisdiction. The power is to decide; it is not restricted to decision without error. In the case under review, the first thing that the court did was to determine that it had jurisdiction to entertain the proceeding, and to decide the matters presented. This is an irresistible inference from the fact that the court did entertain the proceeding and did so decide. The decision of this point was a judicial act, done in the course of the proceeding, and it was as final and conclusive against collateral attack as any other judicial decision."

In *Larimer* v. *Krau* (1914), 57 Ind. App. 33, 45, 103 N. E. 1102, 105 N. E. 936, the authorities upon this proposition were reviewed at some length and it was there said, "From the decided cases and from the underlying principles controlling the questions involved, the rule is deduced that to render a judgment void, it is not enough that the court did not in fact have jurisdiction to render it, but such a want

of jurisdiction must appear upon the face of the record. When a judgment shows on its face that the court or tribunal rendering it had jurisdiction, such judgment can not be assailed collaterally by alleging and proving facts extraneous to the record. If the court is one of general jurisdiction it is presumed to have had the requisite jurisdiction, unless it affirmatively appears from the record that it did not have or acquire such jurisdiction.''

In *Stevens* v. *Reynolds, supra,* it was held that a defective affidavit or its falsity, upon which a notice by publication was given, will not subject the judgment to a collateral attack. In *Wills* v. *Wills* (1911), 176 Ind. 631, 96 N. E. 793, the court, after discussing the provisions of the statute as to being mandatory in reference to the filing of an affidavit with the petition for divorce as to the residence of the plaintiff, said: ''It has been held in other jurisdictions that the provisions of the statutes requiring the verification of pleadings and the filing of affidavits in divorce cases are mandatory, and can not be waived by any act of the defendant, and the affidavit must contain all the things required by the statute. * * * It is evident that where it is not shown by the transcript on appeal that an affidavit of the petitioner was filed as required by §1066, *supra,* the cause must be reversed. If this were collateral instead of a direct attack upon the judgment, we would have a different question.'' Inferentially, at least, it is gathered from this opinion that, although the provisions of the statute are mandatory in reference to the filing of an affidavit by the petitioner for divorce as to his residence, yet after judgment has been rendered it is not subject to collateral attack. Section 1071 Burns 1914, §1036 R. S. 1881, provides that if it appear by affidavit of a disinterested person, that the defendant is a nonresident, the clerk shall give notice by publication. Before the same is given, the statute further provides that the plaintiff shall file an affidavit with the clerk, stating therein the residence of the defendant, if known. The record dis-

closes that John M. Beavers filed an affidavit stating the residence of his wife to the best of his knowledge, also stating in the same affidavit that she was a nonresident. The record is silent as to whether there was an affidavit filed by a disinterested person. But as was said in *Friebe* v. *Elder, supra,* in reference to the issuing of summons, from aught that appears on the face of the record, one may have been issued.

No useful purpose can be accomplished by extending the discussion upon this proposition, for this court and the Supreme Court are committed to the doctrine that when a judgment or decree has been entered of record in a court of general jurisdiction, that to render the same void, it is not enough, that the court did not, in fact, have jurisdiction to render it, but such want of jurisdiction must appear from the face of the record. The decree of divorce under consideration in the light of the authorities is not void, but voidable, for it was expressly held in *Baker* v. *Osborne, supra,* that the judgment could not be collaterally attacked unless the record of the court affirmatively shows that no notice was given, and this is so, although the record shows a defective and irregular notice.

This brings us to the question of the validity of the judgment setting aside the decree of divorce. If the judgment setting aside the decree of divorce is valid, and it is,

5. unless an infirmity appears upon the face of the record, then and in that event the appellant, Margaretta Beavers, was restored thereby to her marital status, for it has been held generally that the vacating of a decree of divorce renders it void *ab initio,* and restores the parties to their previous marital rights. 14 Cyc. 722; *Comstock* v. *Adams* (1880), 23 Kan. 513, 33 Am. Rep. 191; *Vorhees* v. *Vorhees* (1890), 46 N. J. Eq. 411, 19 Atl. 172, 19 Am. St. 404; *Gebhart* v. *Gebhart* (1898), 25 Misc. 1, 54 N. Y. Supp. 406.

The contention of appellees that appellant, Margaretta Beavers, should be denied relief for the reason that she

waited some three years after learning of the enter-

6. ing of the decree of divorce against her, and until

her husband became possessed of property, before she took any steps to set the same aside, can not be inquired into in this cause, if the judgment setting aside the decree of divorce is valid. The court in which it was litigated is one of general jurisdiction and unless the infirmity appears on the face of the record, it is conclusive so far as the suit at bar is concerned.

The decree of divorce as entered of record in the Henry Circuit Court in favor of John M. Beavers and against the appellant, Margaretta Beavers, went no further than to dissolve the marriage. The costs were adjudged against the plaintiff, John M. Beavers. The complaint to set aside the decree of divorce sought no relief whatever other than to set aside the same, and the judgment rendered was, that the decree of divorce be set aside.

The decisions are not in accord as to the legal effect that the death of one of the parties to the original action has

upon the suit to set aside a decree of divorce. The

7. decisions may with propriety, but not with technical

accuracy, be classified under three different classes: (1) The death of the party, who obtained a decree of divorce, either before or after the suit is brought to set aside the same, terminates the right to contest the validity of the divorce proceeding. (2) Where the party is dead, who obtained a decree of divorce through fraud, the other party may have the same vacated. (3) That only where property rights are involved, can a decree of divorce obtained by fraud be set aside after the death of the party obtaining the same. The following authorities are instructive as to the above propositions: *Barney* v. *Barney* (1862), 14 Iowa 189; *Kirschner* v. *Detrick* (1895), 110 Cal. 502, 42 Pac. 1064; *Lieber* v. *Lieber* (1911), 239 Mo. 1, 143 S. W. 458; *Dwyer* v. *Nolan* (1905), 40 Wash. 459, 82 Pac. 746, 111 Am. St. 919, 1 L. R. A. (N. S.) 551, 5 Ann. Cas. 890; *Zoellner* v. *Zoellner*

(1881), 46 Mich. 511, 9 N. W. 831; 14 Cyc. 716; *Bomsta* v. *Johnson* (1888), 38 Minn. 230, 36 N. W. 341; *Rodgers* v. *Nichols* (1905), 15 Okl. 579, 83 Pac. 923; *Leathers* v. *Stewart* (1911), 108 Me. 96, 79 Atl. 16, Ann. Cas. 1913 B 366; *Lawrence* v. *Nelson* (1901), 113 Iowa 277, 85 N. W. 84, 57 L. R. A. 583; *Johnson* v. *Coleman* (1868), 23 Wis. 452, 99 Am. Dec. 193; *Watson* v. *Watson* (1874), 47 How. Pr. (N. Y.) 240; *Clay* v. *Robertson* (1912), 30 Okl. 758, 120 Pac. 1102; 2 Nelson, Div. and Sep. §1054; *Wood* v. *Wood* (1907), 136 Iowa 128, 113 N. W. 492, 125 Am. St. 223, 12 L. R. A. (N. S.) 891; 2 Bishop, Mar. and Div. §261; *McElrath* v. *Littell* (1913), 120 Minn. 380, 139 N. W. 708, 44 L. R. A. (N. S.) 505.

The doctrine, that only where property rights are involved, do courts entertain a suit to vacate a decree of divorce after the death of the party obtaining the same through fraud, is the one supported by the weight of authority and the better reasoning. To say that the death of the party, who obtained the decree of divorce through fraud, precludes any further inquiry into the decree of divorce is rather a harsh doctrine, especially where property rights are involved, for if the action to set aside a decree of divorce does not survive under any condition then the innocent party is deprived from participating in the estate left by the party obtaining a decree of divorce through fraud. On the other hand, ordinarily the power of the court is not invoked to litigate moot questions or ones of mere sentimentality, for if there are no property rights, the setting aside of a decree of divorce would mean nothing more or less than the expunging of a record, as the death of one of the parties settled the marriage status. In *Barney* v. *Barney, supra,* it was said, ''Can this cause of action survive, or can it, upon the suggestion of her death, be revived and continue against her representative? We answer that it can not. The marital relation is purely personal in character, and a proceeding to dissolve this relation is personal. The well known maxim of the law, *actio per-*

*sonalis moritur cum personam,* readily applies. From the nature of the case, in so far as this proceeding related to the divorce, the cause was ended by the death of the complainant. It could not be revived, because there was nothing to survive, death itself having settled the question of separation beyond all controversy.''

In *Kirschner* v. *Detrick, supra,* the supreme court of California had the following to say, ''The action was solely for the purpose of procuring a judgment of divorce between the parties—a purely personal action which would not survive the death of either party, and which, upon the death of the plaintiff, could not be prosecuted or defended, whether her death was before or after judgment. If she had died prior to the entry of judgment, there could have been no judgment in the case, and her death subsequent to the entry of judgment deprived the court of all power to review this action, and determine her right to a divorce. The action having been brought to change the personal status of the plaintiff in her relations towards the defendant, it is evident that, upon the termination of her life, there was no personal status which a judgment could change.''

In *Lieber* v. *Lieber, supra,* 55, it was said, ''in the very nature of things, a direct proceeding for that purpose could not possibly have been brought and maintained, for the simple reason that a judgment in a divorce case is one *in rem* * * *. And Alexander Lieber, the plaintiff, in whose favor the judgment was rendered, is dead. He, therefore, could not have been made a party to such a suit, nor could such a suit have been maintained against him, even though it should have been instituted. Not only that, the subject matter of such a suit is and would necessarily have to be 'the judgment *in rem*', which was rendered in the divorce suit, which in truth and in fact is nothing more or less than the *dissolved marital relations, which formerly existed between* Alexander Lieber and Margaret Lieber. That judgment *in rem* or dissolved relationship would not descend to

his heirs, nor would it pass into the hands of his executor or administrator. Consequently there could be no person or thing represented in any such suit, after one of the parties thereto had died.''

In *Moyer* v. *Koontz* (1899), 103 Wis. 22, 79 N. W. 51, 74 Am. St. 837, it was said, ''The object of such a suit as this, when the husband is alive, is to adjudicate that whereas by the existing fraudulent decree the plaintiff is made single, she shall, by demanded judgment, be adjudicated to still be married. It is the converse of the divorce suit, where the relief sought is that whereas the plaintiff is now married, she may be adjudged to be single. But in a case like this, where, by the irrevocable act of death, her status as to her deceased husband has become fixed as that of a celibate, no such question can exist to be acted on. No decree that the courts of Wisconsin can render can change that status.''

In *Dwyer* v. *Nolan, supra,* the Supreme Court of the State of Washington held that where a decree of divorce was granted, that after the death of the plaintiff, the court should not entertain jurisdiction to set the same aside on the ground that it was purely a personal action and incontestable on the death of either party. In *Rodgers* v. *Nichols, supra,* it was held that the subsequent death of the party who obtained the decree of divorce by fraud will not prevent an action to be brought to set the same aside, and this seems to be irrespective of the question of property rights.

. In *Lawrence* v. *Nelson, supra,* it was held in a case which involved the question as to who was entitled to a pension, that the court would not for the mere purpose of satisfying a sentiment, inquire as to which is the widow of the decedent but that where property rights hinged on the question of the past status of the parties, it might become the subject of judicial investigation. In *Clay* v. *Robertson, supra,* it was held that unless some property rights were affected that the decree of divorce although procured by fraud could not be set aside after the death of the spouse. In this case the wife

obtained a divorce fraudulently from her husband; they held property by entiretics, while husband and wife, and it was held that the decree of divorce might be set aside for the purpose of settling the ownership of the real estate after the death of the wife.

In *Watson* v. *Watson, supra,* it was held that the administrator had no power to contest the setting aside of the decree of divorce, that he had no control or authority over the same, that the proper procedure was an action in the nature of a bill of review bringing before the court all of the heirs at law and persons interested in the estate of the deceased, including persons that had taken conveyances subsequent to the granting of the decree.

In 2 Nelson, Div. and Sep. §1054, it was held, "Where the application is made after the death of the party guilty of fraud, it seems that both the administrator and the heirs of the deceased should be made parties. The interests of the heirs are not identical with that of the administrator, and the decree should be final as to the interests of all parties, when it is certified to the probate court before the estate is settled."

In *Leathers* v. *Stewart, supra,* it was said, "that in such cases the court may, and in proper cases should, vacate the decree of divorce on petition of the defrauded spouse. * * * And this may be done though the libellant has contracted a new marriage since the first was dissolved. * * * So, by the great weight of authorities, the power is sustained, in cases where property rights are involved, though the libellant has since died."

In *Day* v. *Nottingham* (1903), 160 Ind. 408, 417, 66 N. E. 998, Jordan, J., speaking for the court said: "The action instituted by Mrs. Day seems to have been for the sole purpose of securing a divorce—no questions of alimony or property rights apparently were involved. The judgment rendered by the court in the action in question only professes to dissolve the relations of husband and wife which existed

at the time between her and appellant. It was wholly *in rem*. While the court decreed a divorce in favor of the plaintiff, it adjudged that the latter pay the costs. Whatever right of action which she had in the suit in question was wholly personal to her, and there is no provision of the statutory law of this State to rescue such right or cause of action from the application and force of the principle asserted by the maxim, *actio personalis moritur sum personam* (a personal right of action dies with the person). From the very nature or character of the case in controversy the death of Mrs. Day, the complainant, must be held to have terminated all further proceedings in the matter, and if the judgment awarding her the divorce were set aside there would remain no pending action in court in which appellant, under the provisions of the statute in question, might appear and defend in regard to the merits thereof, for certainly her death rendered the mere right to a divorce no longer contestable; for whatever right she may have had in that respect died with her person, hence her administrator could not be substituted as a plaintiff in the action.''

In the cases of *Brown* v. *Grove* (1888), 116 Ind. 84, 18 N. E. 387, 9 Am. St. 823, and *Willman* v. *Willman* (1877), 57 Ind. 500, the relief granted was after the death of the complainant in the divorce proceedings, but it was held that the court was without jurisdiction to render the decree of divorce in either case. And further, these cases disclose that other questions were involved than merely setting aside the decree of divorce; hence these cases are not out of harmony with *Day* v. *Nottingham, supra,* for in that case the only question involved was the setting aside of the decree of divorce, and the opinion discloses that if property rights had been involved a different conclusion, no doubt, would have been reached.

The death of John M. Beavers fixed the status of appellant, Margaretta Beavers. By his death she became an unmarried woman irrespective of the validity of the divorce

proceedings, or as to whether or not the decree was vacated. Upon his death the court was without jurisdiction to litigate this question independent of any other question. The substitution of the administrator as a party defendant for the sole purpose of contesting as to whether or not the decree should be set aside conferred no jurisdiction to proceed further in the matter. The decree of divorce was not set aside by this proceeding, and the title held by appellee, Cora D. Bess, to the real estate is not affected by an unsuccessful attempt to set aside the decree. She was a purchaser for a valid consideration. *Hays* v. *Montgomery* (1889), 118 Ind. 91, 20 N. E. 646. Had the issues been reformed upon the death of John M. Beavers or a new suit filed, setting up that he left an estate, and that it was necessary in order to settle the property rights to set aside the decree of divorce, and if all parties interested, including the administrator and appellee, Cora D. Bess, were made parties, we would have a different question before us.

Finding no reversible error in the record, judgment is affirmed.

NOTE.—Reported in 108 N. E. 266. Vacation of divorce decree, after death of party, in direct proceedings brought by surviving party, see 5 Ann. Cas. 892; Ann. Cas. 1913 B 369. What is direct as distinguished from collateral attack on judgment, see Ann. Cas. 1914 B 82. As to the right to contest the validity of divorce decree after the death of one or both of the parties, see 57 L. R. A. 583; 1 L. R. A. (N. S.) 551; 44 L. R. A. (N. S.) 505. See, also, under (1) 3 Cyc. 370, 360; (2) 13 Cyc. 753, 754; (3) 14 Cyc. 722; (4) 14 Cyc. 724; 23 Cyc. 1085; (6) 14 Cyc. 722, 23 Cyc. 1085; (7) 14 Cyc. 719; Abatement and revival 1 C. J. §§404, 445; 1 Cyc. 64, 86.